UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHELLE R.,[1]　　　　　　　　　　　　　　　　　Case No. 1:20-cv-785

　　　　Plaintiff,　　　　　　　　　　　　　　　　　Bowman, M.J.

　v.

COMMISSIONER OF SOCIAL SECURITY,

　　　　Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michelle R. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. The Commissioner's finding of non-disability will be REVERSED and REMANDED because it is not supported by substantial evidence in the record as a whole.[2]

**I. Summary of Administrative Record**

Plaintiff applied for disability insurance benefits and supplemental security income on June 21, 2017, alleging disability since October 1, 2014. (Tr. 240-46, 249-55). After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). At a hearing held on November 14, 2019, Plaintiff appeared with counsel and gave testimony before ALJ James E. MacDonald; a vocational expert ("VE") also testified. On November 14, 2019, the ALJ

---

[1]The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.
[2]The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

1

issued an adverse written decision, concluding that Plaintiff was not disabled. (Tr. 12-30). The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff was 20 years old on her alleged date of disability. She completed high school and has no past relevant work. The ALJ determined that Plaintiff has severe impairments of "autism spectrum disorder, attention deficit hyperactivity disorder (ADHD) and a neurodevelopmental disorder." (Tr. 18). Although Plaintiff argued at the hearing that her impairments were of listing level severity, the ALJ found that none of the impairments, alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appx. 1, such that Plaintiff would be entitled to a presumption of disability. (*Id*.)

The ALJ determined that Plaintiff could perform a full range of work at all exertional levels, subject to the following limitations:

> She is able to understand and remember simple instructions and carryout simple tasks with simple work-related decisions and judgments performing these tasks with adequate pace, persistence and concentration with two-hour segments allowing for normal breaks. She is to engage in low stress work, such as no assembly lines and no hourly quotas, but can handle occasional changes in a routine work setting if these settings are explained in advance and introduced slowly and gradual throughout the workday or workweek. She cannot be responsible for the health and safety of others. She is not to perform any work that deals with negotiation, confrontation or influencing others in their opinions, attitudes or judgments and is not to direct, control, or plan activities for others. Last, she is limited to occasional interaction with supervisors and coworkers, no interaction with the general public, as part of job duties and no tandem tasks.

(Tr. 19).

Based upon her RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy,

2

including cleaner, laundry laborer, and assembler. (Tr. 29). Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 30). Plaintiff urges this Court to reverse, arguing that ALJ erred by: (1) formulating Plaintiff's RFC; and (2) weighing the medical opinions. Upon careful review, the undersigned finds that Plaintiff's contentions are well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

4

**B. The ALJ's Decision is not Substantially Supported**

Plaintiff challenges the ALJ's RFC assessment. Specifically, Plaintiff argues that the ALJ's RFC determination cannot be sustained because he failed to adopt the findings of Dr. Rotundo, failed to properly consider Plaintiff's use of a job coach and her inability to work in a competitive full-time work environment. Plaintiff's contentions are well-taken.

The RFC is the most activity Plaintiff can do despite the physical and mental limitations resulting from her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155-56 (6th Cir. 2009) (citing the regulations). It is a determination based on all of the relevant medical and other evidence and is ultimately an administrative determination reserved to the Commissioner. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996). Plaintiff has the burden to provide evidence to establish the RFC. See 20 C.F.R. § 404.1545(a)(3); SSR 96-8p.

Here, in formulating Plaintiff's RFC, the ALJ acknowledged Plaintiff's testimony that her autism spectrum disorder and attention deficit hyperactivity disorder (ADHD) cause difficulties with memory, concentration, completing tasks, handling stress, adapting to change, and getting along with others. (Tr. 21; Tr. 49-57). He also summarized the subjective reports of Plaintiff's parents, set forth in a detailed letter dated August 2019, as well as Plaintiff's mother's testimony at the hearing (Tr. 20-21; 59-67, 345-47). The ALJ specifically acknowledged her parents' reports that she struggled in college, had meltdowns in stressful situations, and tried to work a 40-hour week but found it too stressful. (Tr. 20-21; Tr. 60-61, 67, 345-47).

The ALJ discussed educational records showing that while Plaintiff had an individualized education plan (IEP) in school, her intellectual functioning was within average range (Tr. 22; Tr. 360-62, 422, 458-61 (intelligence testing from 2001 and 2016, with scores in average range)). The ALJ also discussed the report of Dr. Amie Duncan, who evaluated Plaintiff in July 2016. (Tr. 23-24; Tr. 420-31). The ALJ acknowledged the statements of Plaintiff's parents to Dr. Duncan that she struggled with sudden and unexpected changes, but that she had shown improvement in managing her emotions. (Tr. 23; Tr. 420). He also noted their reports that she was independent in managing her personal care, cooked, cleaned, did laundry, paid her own bills, got along well with them, occasionally attended social events, and attended an autism support group. (Tr. 23; Tr. 421).

The ALJ found persuasive the opinion of Dr. Jeffrey Baker, who examined Plaintiff in June 2015. (Tr. 22; Tr. 368-69). Dr. Baker opined that Plaintiff would have intermittent impairment and would not always perform satisfactorily. (Tr. 368). He opined that she would function best and would be able to sustain concentration if given very short and simple instructions. (Tr. 368). He further opined that Plaintiff should be able to make simple work-related decisions, and function at a normal pace but may need more brief rest periods. (Tr. 368). Additionally, he found Plaintiff had the ability to accept simple instructions and respond appropriately to supervisors, would not respond well to criticism, could be distracted when working alongside coworkers, would not respond to change well, but would be able to set realistic goals if they were simple and concretely described. (Tr. 368). The ALJ found the opinion was consistent with the evidence showing Plaintiff had worked at near substantial gainful activity (SGA) levels during the relevant period,

6

and the numerous reports that she expressed a desire for more hours or was looking for more work (Tr. 22; Tr. 264, 265, 266-67 (earnings records), Tr. 506, 619, 915, 1355 (Plaintiff's statements that she wanted more hours at work)).

The ALJ also found persuasive the opinion of the psychiatric consultative examiner, Dr. James Rosenthal, who evaluated Plaintiff in November 2017 and March 2018 and opined in March 2018 that she was "functioning adequately" in terms of understanding, remembering and completing directions, maintaining attention and concentration, maintaining persistence and pace for simple and multi-step tasks, and also noted no difficulties in responding appropriately to supervision and co-workers and responding appropriately to work pressure. (Tr. 24-25; Tr. 674- 79; 680-86).

The ALJ also found persuasive the opinions of the State agency psychological consultants, Dr. Katherine Reid and Dr. Patricia Kirwin, both of whom opined that Plaintiff would be capable of routine one to four step tasks, with occasional prompts needed for more complex tasks, and no strict pace or production demands. (Tr. 26-27; Tr. 88, 127). They further found Plaintiff would be limited to occasional superficial interaction with the general public and occasional needs-based interaction with fellow coworkers, and any feedback given by a supervisor would need to be given in a calm and clear manner. (Tr. 26-27; Tr. 89, 128). Finally, they also found Plaintiff would be limited to a static work environment that only undergoes occasional changes to the type of work that is conducted or the procedures necessary to complete the work that is assigned, and any changes would need to be known in advance so that Plaintiff could prepare to adapt. (Tr. 26-27; Tr. 89, 128). The ALJ found these opinions were consistent with Plaintiff's educational history and work history at near SGA levels, the reports that she was doing

well at her job and interacting appropriately with others, and her daily activities including managing her finances and driving herself to and from work. (Tr. 27; Tr. 22; Tr. 58, 61-62, 264, 265, 266-67, 299-306, 354-46, 421, 1034).

The ALJ also considered the report of Dr. Kimberly Rotundo, who examined Plaintiff in March 2016. (Tr. 22-23; Tr. 456-62). Dr. Rotundo found that performance testing reflected borderline average-to-low-average intellectual skills and academic abilities. She noted that Plaintiff struggled with language-based tasks that required her to infer meaning and align responses to open ended questions. Id. Dr. Rotundo also noted that relative weaknesses were also found in activities that required planning, organizing, recalling, and initiating activities (controlled executive functioning and working memory). Dr. Rotundo opined that Plaintiff "will require a highly structured and supportive learning or vocational environment to address difficulties relative to Autism." (Tr. 461). Dr. Rotundo also referred Plaintiff to follow up with the Vocational Education and Disabilities Services at Cincinnati Children's Hospital Medical Center. Id. The ALJ found that Dr. Rotundo's findings were not persuasive "as the claimant lives by herself and has worked since the alleged onset date without a highly structured environment." (Tr. 23). The ALJ's finding in this regard is not substantially supported by the record.

The record contains statements from Plaintiff's parents noting that after graduating high school, Plaintiff went to college and was enrolled in a disability services program. However, she quit school because it was too demanding. In 2017, with her autism diagnosis, qualified for services through Butler County Board of Developmental Disabilities. (Tr. 24). Plaintiff was then able to obtain a job coach and a vocational specialist to help her find a job and remain employable. (Tr. 20-21). The record indicates

8

that Plaintiff met with the job coach regularly and that the coach visited the job site to observe Plaintiff and give her guidance and feedback on her job performance. (Tr. 934-1157).

As noted above, the ALJ afforded great weight to the findings of state agency psychologists because they were "consistent with the evidence that Plaintiff has been able to work since the alleged onset date at a grocery store and with children." (Tr. 27). The ALJ also discounted Dr. Rotundo's opinion because Plaintiff lives by herself and has worked since the alleged onset date without a highly structured environment." (Tr. 23). Such findings are erroneous. Although the ALJ found that record indicates that Plaintiff worked near SGA levels in 2018 and 2019, he failed to note that she did so with significant assistance from a job coach and services from the Butler County Board of Developmental Disabilities.

Furthermore, the ALJ discussed records from Plaintiff's job coach, specifically noting her coach's observations that Plaintiff was generally respectful and appropriate to coworkers, that she showed "excellent" customer service, that when she became stressed, she would take deep breaths to calm down, and that her supervisor said she was doing well. (Tr. 25- 26; Tr. 934, 942, 945, 946, 955, 958, 960, 961). However, he failed to include any discussion regarding his decision to exclude her use of a job coach from her RFC. As noted by Plaintiff, the vocational expert testified at the hearing that an individual who needed a job coach to check performance would be considered a sheltered work environment and would be unable to sustain competitive employment. (Tr. 71).

Thus, with an assessment of this key piece of evidence missing, it is impossible for the Court to determine whether the ALJ's decision is supported by substantial

evidence. Therefore, remand is necessary for the ALJ to properly determine Plaintiff's need for a job coach in order to sustain gainful employment.

### III. Conclusion and Order

This matter is herein remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this opinion. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Id.* at 176.

For the reasons explained herein, **IT IS ORDERED THAT:** the decision of the Commissioner to deny Plaintiff disability benefits is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) consistent with this opinion. As no further matters remain pending for the Court's review, this case is **CLOSED**.

  s/Stephanie K. Bowman  
Stephanie K. Bowman  
United States Magistrate Judge

10